**KOLLER LAW LLC**
David M. Koller, Esq. (PA 90119)
Jordan D. Santo, Esq. (PA 320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANNEMARIE "ANNIE" DAMICO,** | : | **Civil Action No. 2:25-cv-2408** |
| **33 Orchard Lane** | : | |
| **Norristown, PA 19403** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **VARIETY – THE CHILDREN'S** | : | |
| **CHARITY OF THE DELAWARE** | : | |
| **VALLEY,** | : | |
| **2950 Potshop Road** | : | |
| **Worcester, PA 19490** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Annemarie "Annie" Damico (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Variety – The Children's Charity of Delaware Valley (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Variety – The Children's Charity of the Delaware Valley is a children's charity with a location and corporate headquarters at 2950 Potshop Road, Worcester, PA 19490.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on November 21, 2023, alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2024-01705 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated February 11, 2025.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two years of the issuance of the Right to Sue in this matter, but more than one year after filing her charge, as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff has the serious medical conditions of Post Traumatic Stress Disorder ("PTSD") and Attention-Deficit/Hyperactivity Disorder ("ADHD"); both are considered disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

21. The major life activities affected by PTSD and ADHD, include, but are not limited to, concentration, sleeping and working.

22. In or around November 2022, Defendant hired Plaintiff in the position of Human Resources Representative and Bookkeeping Assistant.

23. Plaintiff was well qualified for her position and performed well.

24. At the start of her employment with Defendant, Plaintiff notified Lisa DeGori, Human Resources and Finance Director, of her disabilities.

25. Plaintiff requested a reasonable accommodation for her conditions by asking DiGori for permission to wear headphones as she worked to eliminate distractions.

26. DeGori granted this accommodation request.

27. Plaintiff and DeGori were the only two (2) people in their department at Defendant.

28. Defendant made it clear that it would be frowned upon if Plaintiff used PTO during the summer, Defendant's busy season.

29. Defendant claimed to Plaintiff that nobody would have been able to fill in to cover Plaintiff's job duties if she took off.

30. Further, DeGori stated that Defendant's management would hold Plaintiff to a higher standard than other employees at Defendant; upon information and belief, those other employees were not disabled and/or had not asked for accommodations for disabilities.

31. On or about July 17, 2023, Plaintiff's mother was violently carjacked.

32. This incident heightened the symptoms of Plaintiff's disability(ies).

33. Plaintiff told DeGori this.

34. Despite this, Defendant did not allow Plaintiff to take any time off for her heightened symptoms.

35. Additionally, on or about August 10, 2023, Plaintiff's dog died.

36. This also heightened Plaintiff's disability(ies) symptoms.

37. Defendant allowed Plaintiff to take one (1) personal day off for this on or about August 10, 2023.

38. Defendant did not give Plaintiff adequate personal time off.

39. The stress, her heightened disability symptoms, and the lack of adequate personal time off, Plaintiff made a minor payroll error in or around mid-August 2023.

40. Plaintiff mistakenly overpaid three (3) hourly employees, including herself.

41. Both DeGori and the payroll company did not pick up on this error until after processing the payment.

42. Eventually, DeGori asked Plaintiff about the error.

43. Plaintiff did not know that she had made the error nor did she know how the error occurred.

44. On or about August 21, 2023, Dominique Bernardo, CEO and Defendant's Board of Directors ("BOD") terminated Plaintiff, allegedly because of the minor payroll error.

45. DeGori informed Plaintiff of the termination in person.

46. However, upon information and belief, Defendant did not discipline DeGori for not catching the mistake prior to payroll being processed.

47. Further, DeGori stated Bernardo and Defendant's BOD falsely accused Plaintiff of trying to steal money from Defendant and "defraud the company."

48. Prior to this one incident, Plaintiff had not made any errors nor received any discipline based on her performance.

49. Further, shortly after, in or around September 2023, the development team had mistakenly sent out mailings with an incorrect date.

50. This cost Defendant hundreds of dollars.

51. Yet, none of the development employees, including Gregory Smith (non-disabled) and Ben Fickinger (non-disabled), were disciplined nor terminated for this.

52. Defendant discriminated against Plaintiff due to her disability, failed to accommodate her, and retaliated against her for requesting accommodation in violation of the ADA and the PHRA.

53. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

54. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

55. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by

Defendant and its agents as being disabled.

56. Plaintiff was qualified to perform the job.

57. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

58. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

59. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

60. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

61. The purported reason for Defendant's decision is pretextual.

62. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

63. The above actions by Defendant also constitute a failure to accommodate and/or a failure to engage in the required interactive process.

64. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

65. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

66. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

67. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

68. Plaintiff was qualified to perform the job.

69. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

70. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

71. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

72. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

73. The purported reason for Defendant's decision is pretextual.

74. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

75. The above actions by Defendant also constitute a failure to accommodate and/or a failure to engage in the required interactive process.

76. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## <u>AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED</u>

77. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

78. Plaintiff engaged in activity protected by the ADA.

79. Plaintiff requested reasonable accommodations due to her disabilities to Defendant.

80. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

81. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

82. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

83. Plaintiff engaged in activity protected by the PHRA.

84. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

85. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Annemarie Damico, requests that the Court grant her the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Emotional pain and suffering;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences;

(h)    A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(i)    Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

<u>**CERTIFICATION**</u>

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**


Date: May 12, 2025                    **By:**    <u>*/s/David M. Koller*</u>
David M. Koller, Esquire (PA 90119)
Jordan D. Santo, Esquire (PA 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*